STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, v. FIRST STATE BANK OF PAWNEE CITY, APPELLEE: A. M. HUSTON, TRUSTEE, ET AL., APPELLANTS.

FILED OCTOBER 11, 1929. No. 26919.

*Dort & Witte,* for appellants.

*C. M. Skiles* and *I. D. Beynon, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an appeal by the appellants from a decree of the district court dismissing their application to be relieved from the performance of a contract whereby they agreed to purchase the remaining assets of the First State Bank of Pawnee City. The facts are not in controversy and are substantially as follows: On May 22, 1928, the bank was in

the hands of a receiver, who entered into a contract with A. M. Huston as trustee for himself, Earl Ryerson, J. F. Halderman, D. W. Osborn, and F. L. Aikins, whereby all the remaining assets of the bank were sold to the trustee for the sum of $47,500 to be paid as specified. The assets consisted of a large number of notes and real estate in Nebraska and Kansas. The beneficiaries of the trust were stockholders in the bank, and it was a part of the agreement that each of them should confess judgment in favor of the bank for the par value of the stock held by him, being the full amount of their stockholders' liability, and that upon rendition of such judgments the receiver would assign them to Huston, trustee. Ida Halderman, at the time of her death, April 19, 1924, was the owner of 78 shares, and it was a part of the agreement that her heirs, to wit, Charles W. Halderman, Frank R. Halderman, Jacob F. Halderman, and William F. Halderman should confess judgments the same as other stockholders, which were to be assigned in like manner.

After the contract had been executed, application was made by the receiver, E. J. Dempster, to the district court for Pawnee county, praying that said contract be approved, and that he be authorized to carry out the same by a transfer of the assets, conveyance of the real estate of the bank to the trustee, and assignment of the judgments to be procured. Notice of the hearing of such application was duly published for two weeks and hearing had by the court on July 14, 1928. After having the matter under advisement for a short time, later in July the court announced his conclusion, approving the contract except in one particular, viz.: The court expressed serious doubt whether the court had jurisdiction to authorize that part of the contract providing for the confession of judgments and the assignment thereof, as it had the appearance of compromising the stockholders' liability, which he considered he had no right to do. Thereupon the court submitted to the parties an order approving the contract of sale with the following conditions or restrictions: "In so far as the power of the court extends at this time to the proposed assignment of the

judgment or judgments against the stockholders which may later be obtained by the receiver"—and authorized the receiver to perform the contract according to the terms thereof, "except it be hereafter held that the court is now without power or authority to authorize the receiver to assign any judgment or judgments he may recover against any or all the stockholders for less than the statutory liability, in which event the proposed assignment or settlement of such judgments shall be left to the further determination of the court to accept or reject."

The above quoted portions of the decree were objected to by the receiver and the trustee, and no further action was taken by either party to procure a satisfactory order, and both parties seem to have come to the conclusion that the contract would have to be abandoned. On August 31, 1928, C. M. Skiles, counsel for the receiver, wrote a letter to Honorable J. B. Raper, district judge, who heard the application, stating that the purchasers were unwilling to complete the deal considering the conditions and reservations suggested in the order of approval above quoted, and expressing the opinion that they would have to call the deal off, and asking what kind of an order would be necessary in order to clear the records so that the receiver could proceed to liquidate the bank and bring suit against the stockholders. No reply was received to this letter, but on September 6 following, without notice to either party or counsel, the district judge entered an order approving the contract in all respects, without the suggested exception and reservation.

September 13, 1928, Mr. Skiles learned of the entry of the order and wrote the trustee informing him of that fact, stating that the guaranty fund commission was now desirous of completing the contract. This the trustee refused to do, and on October 17, 1928, filed application to be relieved from the performance of the contract, setting forth the facts above detailed, upon the ground that the receiver was without authority to enter into that part of the contract providing for the assignment of the judgments, and

that the court was without jurisdiction to approve the same in so far as it affected the liability of the stockholders of said bank.

As a further ground for release from said contract, the trustee called attention to the fact that three of the Halderman heirs were not parties to it and had refused to confess judgment as required thereby. Numerous conversations were had with officers and representatives of the guaranty fund commission by the trustee and one of the beneficiaries, upon the assumption that the contract would not receive the court's approval for the reason that it amounted to a compromise of the stockholders' double liability, which, it was believed, would be contrary to the statute, and steps were taken to restore to the trustee the $5,000 paid upon the contract. And as a further ground, it was alleged that, by reason of the delay in procuring the order, the trustee was compelled to cancel certain contracts for the sale of some of the lands to be conveyed, whereby he had been subjected to loss and expense, and that because of the change in the situation it would be inequitable to now require performance of the contract.

An answer to said application was filed by the receiver, and reply to said answer by the trustee, the contents of which we do not deem it necessary to set out in detail. Evidence was taken and hearing had upon the application and other pleadings, and, as before stated, the application was dismissed.

As to the claim of the trustee that the court was without authority to approve the contract because it amounted to a compromise of the stockholders' liability, we think this question is not presented by the record before us. It does not appear what portion of the consideration to be paid by the trustee was represented by the judgments to be procured and assigned, and what portion by the assets of the bank. The total stockholders' liability of the trustee and his beneficiaries was the sum of $17,500. It is quite possible that the consideration to be paid represented the full amount of this liability, plus the remainder of the purchase

price, $30,000, for the other assets. We will, therefore, not discuss nor determine the question of the power of the court to authorize, under any circumstances, a compromise of the stock liability of stockholders in banks.

As to the objection that three of the heirs are not parties to the contract and cannot be compelled to confess judgment for the amount of their stockholders' liability, if any, we are unable to perceive how the trustee can make the point, because those provisions of the contract were for the benefit of the trustee and the parties he represented, and the acts to be performed were wholly within their control. If they wished to obtain the benefit of the contract, they could at any time confess judgment and demand an assignment.

The most serious question is whether or not, under the circumstances disclosed by the record, in equity and good conscience the contract should be specifically enforced over the objection of the trustee. It appears beyond question that upon the announced refusal of the court to approve the contract for want of jurisdiction, upon the theory that it amounted to a compromise of the stockholders' liability, both parties considered the contract at an end and so treated it. They discussed the matter and took steps to restore the part payment which had been made upon the contract, and to procure the proper order to clear the records so that the receiver might proceed with the closing of the bank as though no contract had been made. The trustee took no further steps toward the execution of the contract and canceled two contracts which he had made for the sale of part of the lands to be conveyed, upon the assumption that the contract would not be approved. In short, the parties treated the contract as abandoned. No further application was made to the court beyond the letter of Mr. Skiles asking the judge what kind of an order would be necessary to clear the records. The court then, upon its own motion and without notice to either party, entered the order of approval. We do not think, under these circumstances, that the trustee should be required to perform the contract. True, it does not appear from the record that

44

the trustee has suffered any definite loss by reason of the cancelation of the contracts referred to, nor that there has been any change in the value of the bank assets to be transferred, but we think the trustee was justified in considering the contract ended and taking no further steps toward its execution upon learning of the position of the court as to its authority to approve the contract. The change of opinion by the court upon this question did not resolve the serious doubt as to the validity of the contract. The trustee is in a position analogous to that of a purchaser at judicial sale and should not be compelled in equity to accept a doubtful title which may expose him to the hazard of further litigation with parties not before the court. Notwithstanding the holding of the district court and an affirmance by this court, upon a record which does not disclose that any compromise of stockholders' liability was attempted, that question would still be open and the trustee might be subjected to litigation and the hazard of being required to meet the stockholders' liability which it was the intention of the contract to extinguish, in addition to the cash required to be paid by the contract. Equity requires that, in doing justice to one party, injustice be not done to the other. *Cook v. Stafford,* 86 Mich. 163.

We conclude that in view of the conduct of the parties upon the assumption that the contract would not receive the approval of the court, and the serious question of the authority of the court to approve the contract as made, it would be inequitable and unjust to require specific performance. It follows that the order of the district court dismissing appellants' application to be relieved from the contract is erroneous and must be reversed, with instructions to the district court to enter an order sustaining such application, canceling the contract, and relieving the parties from all obligations thereon.

REVERSED.